**REVERSE and REMAND and Opinion Filed July 19, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00333-CR

### JOSHUA RAY ARMSTRONG, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 15th Judicial District Court
Grayson County, Texas
Trial Court Cause No. 071639**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Reichek

Joshua Ray Armstrong appeals his conviction for driving while intoxicated – 3rd or more. Asserting five issues, appellant generally contends the trial court erred in failing to suppress evidence obtained as a result of his warrantless arrest and the evidence is insufficient to support his conviction. Because we conclude the trial court erred in denying appellant's motion to suppress, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## Background

On the morning of August 12, 2019, Laci Starnes, an assistant manager at the Steeple Chase apartment complex in Sherman, Texas, received a call from an apartment resident that someone was driving in the complex's courtyard area. Starnes looked out of her office window and saw a white pickup truck in the courtyard turning in a circle. Starnes described the courtyard as a large grassy area with a pool, playground, grills, and benches. Although the courtyard has sidewalks, there is no roadway for a car to access the area. Starnes said she had never seen someone driving a vehicle in the courtyard before.

James Douglas, Steeple Chase's lead maintenance person, testified he saw the pickup truck driving around the complex earlier that morning. According to Douglas, the truck was driving down the middle of the road and "meandering" as though the driver was unsure of where he was going. When Douglas later saw the truck in the courtyard, it appeared to him that the truck was trying to back its way out. Douglas stated there was no ramp to the courtyard area, so the truck would have had to "pop the curb" to get access. Douglas immediately went to the apartment complex office to report what he had seen.

Starnes and Douglas went looking for the pickup truck in a golf cart and found appellant continuing to drive around the complex. At one point, the truck almost hit the golf cart, forcing Douglas to move the cart out of the way. Douglas stated it did

not appear the truck was aiming for the cart, but that the driver was not paying attention.

After stopping appellant, Starnes and Douglas spoke to him through the driver's side window. Both described appellant as fidgety and incoherent. Starnes testified appellant could not hold his head up or speak in complete sentences. Douglas believed appellant was intoxicated. After trying to get appellant to focus and speak with them, appellant sped away quickly. Starnes stated she had to jump out of the way or the truck might have run over her feet. She then called 911.

Officer Logan Rogers received a call from the Sherman police dispatcher concerning a vehicle being driven erratically in the courtyard of the Steeple Chase apartments. The vehicle was described as a white pickup truck with a deer sticker on the back window. The dispatcher also relayed a license plate number that showed the truck was registered to appellant. Rogers and several other officers responded to the call.

Upon arriving at the scene, Rogers met with Starnes and Douglas who had located the truck parked in front of one of the apartment buildings. Starnes and Douglas told Logan what they had seen and described the driver. After speaking with neighbors, the officers knocked on the door of an apartment belonging to Kelci Helvey. When Helvey came to the door, Rogers asked her if she would get the person who had been driving the truck. Helvey went inside briefly and returned with appellant.

Rogers testified that appellant was extremely unsteady on his feet and his movements were twitchy and exaggerated. He further stated that appellant was sweating profusely. Body cam footage of the interview shows appellant swaying on his feet and making large gestures. When Rogers questioned appellant, he frequently appeared not to understand what he was being asked or he ignored the questions. Appellant acknowledged the pickup truck was his, but stated he had not been driving that morning and was asleep when the officers arrived. He stated he had been out partying the night before, but he could not remember where. When Rogers asked appellant if he had taken anything that morning, appellant stated he had taken Suboxone. Rogers decided against having appellant perform sobriety tests because he was afraid appellant was too unstable and would fall and hurt himself. Instead, Rogers had appellant sit on the ground.

Rogers took Helvey aside to speak with her separately. Helvey told Rogers that she and appellant were in an "off and on" relationship and they had been fighting. Although appellant was not on the lease, he was staying with her temporarily and he kept some of his things at her apartment, including his prescription for Suboxone. She further told Rogers that appellant had come to her apartment early that morning, but she told him to leave because he was intoxicated. When he came back several hours later, shortly before the police arrived, she let him in. She said he appeared incoherent and frantic and had not been sleeping before the police arrived. Helvey gave the police appellant's prescription bottle for Suboxone.

She stated appellant did not use drugs in her apartment and had not taken any drugs before the police arrived.

The officers arrested appellant for driving while intoxicated. They did not obtain a warrant before arresting him. Following his arrest, appellant consented to a blood test.

Prior to trial, appellant moved to suppress all evidence obtained as result of his arrest, including the results of his blood test. Among other things, appellant argued the evidence acquired by the State was not obtained pursuant to an arrest warrant and there were no exigent circumstances to justify his warrantless arrest. At appellant's request, the motion to suppress "ran with trial."

At trial, the State presented the testimony of Sarah Martin, a forensic chemist with the Texas Department of Public Safety. Martin stated she analyzed the blood sample given by appellant and found amphetamine, methamphetamine, and benzodiazepine. The level of methamphetamine in appellant's blood was .29 milligrams per liter. According to Martin, any amount over .2 milligrams per liter indicates abuse. Although she did not test for Suboxone, she stated Suboxone would not cause the results generated by the tests she performed on appellant's blood.

Martin explained that Suboxone is a medication used to treat opiate addiction and would not cause the symptoms exhibited by appellant on the day of the offense. She further explained that amphetamines and methamphetamines are stimulants that cause increased heart rate, jitteriness, and increased body temperature.

Benzodiazapine, in this case Alprazolam – also known as Xanax – is a central nervous depressant that causes drowsiness, confusion, and dizziness. Martin stated that taking both methamphetamine and Xanax would not cause a "cancelling out" effect, but the person ingesting the drugs would instead suffer the side effects of both. Unlike alcohol, which has a steady elimination rate, it is not possible to tell based on the amount of a drug found in the blood stream when the drug was ingested.

At the close of evidence, appellant's counsel asked the trial court to grant the motion to suppress stating there was no evidence to support the warrantless arrest. The court responded, "I think you've got a decent argument on the motion to suppress, but I'm going to deny it under these circumstances."

The jury found appellant guilty of driving while intoxicated as alleged in the indictment. The jury also found that appellant used or exhibited a deadly weapon, specifically a motor vehicle, during commission of the offense. At sentencing, the State introduced evidence of appellant's prior convictions for driving while intoxicated. The court sentenced appellant to thirty-five years in prison, and this appeal followed.

**Analysis**

**I. Sufficiency of the Evidence**

In his fourth issue, appellant argues the evidence is insufficient to support the jury's finding that he was intoxicated at the time he was driving his truck. When reviewing a challenge to the sufficiency of the evidence supporting a criminal

conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder is the sole judge of the witnesses' credibility and their testimony's weight. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may choose to disbelieve all or any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). We review all of the evidence in the case regardless of whether it was erroneously admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "A court's role on appeal is restricted

to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a). The term "intoxicated" is defined to mean "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id*. § 49.01(2). A police officer may develop probable cause to believe that an individual was driving while intoxicated without actually observing the individual drive a vehicle. *Tex. Dep't. of Pub. Safety v. Allocca*, 301 S.W.3d 364, 369 (Tex. App.—Austin 2009, pet. denied). And while there must be a temporal link between the defendant's intoxication and the operation of the vehicle, a conviction for the offense of driving while intoxicated may be supported solely by circumstantial evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). The factfinder may reasonably infer that the defendant operated a motor vehicle while intoxicated based on the cumulative force of the evidence presented. *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015); *see also Garcia v. State*, 112 S.W.3d 839, 850 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (retrograde extrapolation testimony not necessary to show intoxication).

In this case, the evidence showed that appellant arrived at his girlfriend's apartment in the early morning hours of August 12, 2019 and she refused to let him in because they had been fighting and she believed he was intoxicated. When appellant was seen a few hours later, he was driving his truck around the apartment complex in a meandering fashion. Appellant then proceeded to "pop the curb" of the complex parking lot and drive his truck into the grassy courtyard. Douglas testified appellant seemed unfocused and, at one point, appellant's truck almost collided with the golf cart he was driving. When appellant was stopped by Douglas and Starnes shortly afterwards, appellant appeared fidgety, incoherent, and could not hold his head up.

Appellant eventually made his way back to Helvey's apartment where police found him ten to fifteen minutes later. Appellant appeared extremely unsteady and unable to focus. Although appellant denied having driven and stated he had been sleeping, Helvey indicated this was not true and that he had only been at the apartment for only a short time. Helvey confirmed appellant had Suboxone at the apartment, but stated he did not "do" any drugs before police arrived.

Blood tests taken after appellant was arrested showed he had a high level of methamphetamine in his blood as well as Xanax. The State's forensic chemist testified those substances can cause jittery movements, high body temperature, confusion, and dizziness, all of which witnesses testified appellant exhibited before, during, and after he was seen driving. Given the eye-witness testimony, the short

–9–

time period between when appellant was seen driving and when he was found by the police, and the results of the blood test, we conclude the evidence is sufficient to support the jury's finding that appellant was intoxicated at the time he was driving. *See Murray*, 457 S.W.3d at 449. We resolve appellant fourth issue against him.

In his fifth issue, appellant argues the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during commission of the offense. A "deadly weapon" is anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B). A deadly weapon finding in a case involving driving while intoxicated is dependent upon specific testimony in the record about the manner of the vehicle's use. *Couthren v. State*, 571 S.W.3d 786, 790 (Tex. Crim. App. 2019). We examine whether the defendant's driving was reckless or dangerous. *Id*. "Reckless or dangerous driving has been demonstrated by speeding, disregarding traffic signals, failing to maintain control of the vehicle, fishtailing, causing property damage with the vehicle, driving on the wrong side of the road, almost colliding with another vehicle, and failing to yield to traffic." *Id*. at 793. The State need not show that the defendant actually caused or intended to cause death or serious injury, but only that the manner of his driving was capable of doing so. *Moore v. State*, 520 S.W.3d 906, 913 (Tex. Crim. App. 2017). A near-collision is sufficient to establish more than a hypothetical danger of serious bodily injury. *Id*. at 909.

Douglas testified he saw appellant driving through the apartment complex down the middle of the roadway in a meandering fashion. Appellant eventually drove over the curb and into the grassy courtyard area where benches, grills, and a playground were located. A short time later, Douglas and Starnes encountered appellant back on the roadway and Douglas had to steer his golf cart out of the way when appellant's truck "almost hit" them. Douglas and Starnes testified that when they spoke with appellant, he was incoherent and could hardly keep his head up. Appellant then sped away while both Douglas and Starnes were standing in close proximity to the truck, requiring Starnes to move out of the way. From this evidence, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant drove his motor vehicle in a reckless or dangerous manner capable of causing serious bodily injury to others. We resolve appellant's fifth issue against him.

## II. Exigent Circumstances

In his second issue, appellant contends his warrantless arrest was unauthorized and the trial court erred in denying his motion to suppress the blood evidence collected as a result. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Under this standard of review, we give almost total deference to the court's determination of historical facts and its rulings on the application of law to those questions of fact, and mixed questions of law and fact that are based on an

assessment of credibility and demeanor. *Id.* For mixed questions of law and fact that do not involve an evaluation of credibility and demeanor, however, we may conduct a de novo review. *Id.* The de novo standard applies to the trial court's ultimate determination of whether the totality of facts available to the officer, and reasonable inferences therefrom, objectively suffice to establish an exigency justifying a warrantless arrest. *State v. Couch*, 595 S.W.3d 748, 757 (Tex. App.—Austin 2019, pet. ref'd).

Warrantless arrests in Texas are authorized only in limited circumstances. *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005). When the defendant is arrested without a warrant, it is the State's burden to prove its actions fell within one of the statutory warrantless-arrest exceptions. *State v. McGuire*, 586 S.W.3d 451, 461 (Tex. App.—Houston [1st Dist.] 2019, pet. granted). In this case, the State relied on article 14.03(a)(1) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1).

Article 14.03(a)(1) authorizes the warrantless arrest of a person found in a suspicious place and under circumstances that reasonably show an offense has been, or is about to be, committed. *Id.* "Any 'place' may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by the police." *Id.* Exigent circumstances embrace situations in which real, immediate, and serious consequences will certainly occur if action is

–12–

postponed to obtain a warrant. *Randolph v. State*, 152 S.W.3d 764, 771 (Tex. App.—Dallas 2004, no pet.).

Appellant's motion to suppress was based, in part, on the absence of exigent circumstances that would justify his warrantless arrest. During argument of the motion in the trial court, the State did not discuss exigent circumstances or point to any evidence that would support a finding that exigent circumstances existed at the time appellant was arrested. No evidence was presented regarding the time it would have taken to obtain a warrant. Nor was any evidence introduced that would suggest obtaining a warrant was impractical or would result in the destruction of evidence.

On appeal, the State argues only that "Officer Rogers needed to take prompt action to keep [appellant] from potentially driving away from the apartment complex since the apartment was not his residence." The State contends "appellant was a danger to himself and others had he left the premises in his pickup – or even just walking – while officers waited on an arrest warrant." The State's argument is based on hypotheticals, unsupported by the evidence, rather than real and immediate circumstances demonstrating exigency.

Although the record shows appellant was not a permanent resident of the apartment where he was found, his girlfriend testified he had been staying with her "for some time" because "he was in between trying to get jobs and find his own place." Appellant kept at least some of his belongings, including clothes and toiletries, at the apartment, and there was no evidence he intended to leave

imminently. The State suggests Helvey might have asked appellant to leave based on her refusal to let him into the apartment several hours earlier. But even if this hypothetical situation occurred, there were multiple officers at the scene, any one or more of which could have remained to prevent appellant from becoming a danger to himself or others while a warrant was obtained.

Based on the record before us, we conclude the State failed to meet its burden to establish that exigent circumstances existed justifying appellant's arrest without a warrant. *See McGuire*, 586 S.W.3d at 459. We conclude, therefore, the trial court erred in denying appellant's motion to suppress. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Brown v. State*, 826 S.W.2d 725, 729 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (evidence seized pursuant to illegal arrest should have been suppressed).

Because the trial court erred in admitting the blood test evidence obtained as a result of appellant's illegal arrest, we must now determine whether the error affected appellant's substantial rights. *See Holder v. State*, 639 S.W.3d 704, 707 (Tex. Crim. App. 2022). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record including (1) any testimony or physical evidence admitted for the jury's consideration, (2) the nature of the evidence supporting the verdict, (3) the character

–14–

of the alleged error and how it might be considered in connection with other evidence in the case, (4) the instructions given to the jury, (5) the State's theory and any defensive theories, (6) closing arguments, (7) voir dire, and (8) whether the State emphasized the error. *Id*. at 518–19.

Our review of the record here shows the blood test evidence was central to the State's case. One of appellant's defensive theories was that his condition on the day of the offense was caused by a medical issue exacerbated by the fact that he had been fighting with Helvey. When the State attempted to elicit testimony from Helvey about appellant's previous behavior while on drugs, appellant's counsel objected. The State responded that it wanted to establish appellant's behavior was not a result of his being upset about fighting with Helvey, but was caused instead by his drug use. In sustaining appellant's objection, the trial court said, "You have the blood test, don't you?" When the State responded "Yes," the trial court said "I'm not going to let it in right now." The State then passed the witness.

The police did not recover any drugs from the apartment other than Suboxone and Helvey testified appellant did not do drugs while at her apartment. The only direct evidence that appellant had drugs in his system other than Suboxone on the day of the offense was the blood test results. The State's toxicology witness testified at length about the blood test results and the effects that methamphetamine and Xanax have on a person's condition and behavior. During closing argument, the State noted that, although there were no drugs other than Suboxone recovered from

–15–

Helvey's apartment, there was both methamphetamine and Xanax in appellant's blood.

Given the evidence introduced at trial, the arguments made by the State and defense counsel at trial, and the absence of any other direct evidence that appellant had ingested methamphetamine and Xanax, we conclude it is likely the admission of the blood test results had an injurious effect or influence on the jury's verdict. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

210333F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSHUA RAY ARMSTRONG,
Appellant

No. 05-21-00333-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 071639. Opinion delivered by Justice Reichek. Justices Molberg and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered July 19, 2022